UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| WALDEMAR PÉREZ-ROSARIO,<br><br>    Plaintiff,<br><br>    v.<br><br>HAMBLETON GROUP, et al.<br><br>    Defendants. | Civil No. 08-1459 (JAF) |

**OPINION AND ORDER**

Plaintiff Waldemar Pérez-Rosario brings this action against Defendant Hambleton Group for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Puerto Rico Law No. 100, of June 30, 1959, 29 L.P.R.A. § 146 (2001) ("Law 100"), and Law No. 80, of May 30, 1976, 29 L.P.R.A. § 185a (2006) ("Law 80"). Docket No. 4. Plaintiff argues that Defendant failed to provide him reasonable accommodations and discriminated against him on the basis of actual and perceived disability. Id. Defendant moves for summary judgment. Docket No. 29. Plaintiff opposes, Docket No. 39, and Defendant replies, Docket No. 46.

Civil No. 08-1459 (JAF)                                                          -2-

**I.**

**Factual and Procedural Synopsis**

We derive the following factual summary from Defendant's statement of uncontested facts, as well as the parties' motions and exhibits.[1] Docket Nos. 29, 40, 41, 47, 52.

Defendant is a Puerto Rico corporation in the business of interior construction, and Celso Suárez is Defendant's president. Plaintiff is a mildly-retarded, morbidly-obese individual who began working for Defendant as a non-skilled laborer in November 2004. Suárez interviewed and hired Plaintiff. Plaintiff mentioned to Suárez that he had a back condition during the interview. At the time of the interview, Plaintiff weighed 336 pounds.

On Plaintiff's first day of work, Julio Reyes, his direct supervisor, told him that he did not understand Plaintiff's name and that he would nickname him "Kamala", referring to an obese professional wrestler by that name. Plaintiff's coworkers also called

---

[1] Local Rule 56(c) requires parties opposing summary judgment to submit a statement admitting, denying, or qualifying the moving party's statement of uncontested facts, with reference to each numbered paragraph. The opponent must support each denial or qualification with a citation to the record. Id. Plaintiff's statement of uncontested facts does not comply with the local rules. See Docket No. 40. Instead, he provides his own version of the facts, without stating which of Defendant's facts he disputes. See id. Therefore, we generally accept Defendant's statement of material facts as uncontested. See Sánchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 212 (1st Cir. 2008) (upholding district court's decision to accept defendant's statement of facts as uncontested where Plaintiff had failed to comply with local rules). However, insofar as Plaintiff has supported his allegations with documentary evidence, we note these facts as part of the record.

him Kamala, and used other offensive names such as "Big Momma," referring to a movie about an obese woman. Coworkers also posted drawings and newspaper cutouts alluding to Plaintiff's weight, and made animal sounds as he was eating. One coworker, Israel, occasionally grabbed Plaintiff's buttocks. When Plaintiff complained of the groping to Suárez, Suárez stated that Israel was a productive, trained woodworker, and that Plaintiff could either cope with the treatment or leave. After this complaint, Plaintiff's coworkers called him a tattle-tale and cry-baby. Plaintiff complained about the name-calling to Helen Keene, who was in charge of Human Resources. Keene spoke with Plaintiff's supervisor regarding the harassment; however, the name-calling did not stop.

Plaintiff stated in a deposition that his obesity does not disable him, although it prevents him from working in narrow spaces or climbing ladders or scaffolding. He further stated that his mild retardation does not handicap him. Finally, he averred that his back condition is disabling because it prevents him from doing heavy lifting.

Plaintiff was absent from work (reported as "sick" or "did not come") twenty times in 2005, as compared to between five and eleven absences among the four employees he cites for comparison. See Docket No. 41-4, Ex. 10. In the first six months of 2006, he was absent nine

Civil No. 08-1459 (JAF)                                                     -4-

times while the four comparison employees were absent between one and ten times over the whole year. See id.

Keene spoke with Plaintiff several times about his excessive absences. Suárez also reprimanded Plaintiff verbally on several occasions for his lateness and absenteeism. On April 27, 2005, Keene gave Plaintiff a disciplinary memorandum regarding his absences from work. Docket No. 42, Ex. 2. On March 23, 2006, Keene gave Plaintiff a disciplinary warning for returning late from his lunch break. Docket No. 42, Ex. 3. Through a memorandum dated June 23, 2006, Keene informed Plaintiff that Defendant was terminating him for excessive absences. Docket No. 42, Ex. 4.

On April 24, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Puerto Rico's Anti-Discrimination Unit ("ADU"). Docket No. 29-1, Ex. 1. He asserted that he had been the victim of discrimination and mockery as a result of his obesity. Id.

On April 28, 2008, Plaintiff filed the present complaint in federal district court. Docket No. 4. Defendant moved for summary judgment on January 21, 2009. Docket No. 29. Plaintiff opposed on February 16, 2009, Docket No. 39, and Defendant replied on March 2, 2009, Docket No. 46.

## II.

## Summary Judgment Standard under Rule 56(c)

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. at 331.

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-moving party "may not rely merely on allegations or denials in its

own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.

### Analysis

Plaintiff brings ADA claims on the theory that he was actually disabled within the meaning of the ADA because of his morbid obesity, spinal cord disease, and mental retardation, and that Defendant failed to accommodate his disabilities and terminated him for his disabilities. Docket Nos. 4, 39. In the alternative, Plaintiff argues that Defendant regarded him as disabled within the meaning of the ADA fired him for this perceived disability. Docket Nos. 4, 39. Plaintiff also brings Puerto Rico claims for wrongful termination. Docket No. 4.

First, we address exhaustion of remedies to determine which of Plaintiff's alleged disabilities are properly before this court. We then consider Plaintiff's failure to accommodate and discrimination claims arising from Plaintiff's alleged actual disability. Next, we address Plaintiff's perceived disability claims. Finally, we consider Plaintiff's Puerto Rico claims.

**A.   Exhaustion**

Defendant contends that we must dismiss all claims arising from disabilities other than obesity because Plaintiff failed to exhaust

Civil No. 08-1459 (JAF)                                                -7-

his administrative remedies with respect to those claims. Docket No. 29. Plaintiff does not respond to this argument.

Prior to filing suit in federal court, a plaintiff must comply with the administrative exhaustion procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999). He must file a charge with the EEOC or an authorized state or local agency within prescribed time periods following the alleged discrimination. Id.

Plaintiff filed a charge of discrimination with the ADU. See Docket No. 29-3, Ex. 1. However, he alleged only discrimination on the basis of his obesity, and never mentioned mental retardation or spinal cord injuries. See id. Accordingly, we find that Plaintiff failed to exhaust his claims based on disabilities other than obesity, and dismiss these claims without prejudice. See Bonilla, 194 F.3d at 277.

**B.   Failure to Accommodate and Discrimination Based on Actual Disability**

Plaintiff claims that Defendant failed to provide him with a reasonable accommodation for his disability, in violation of the ADA. Docket No. 4. Defendant argues that Plaintiff cannot establish a failure to accommodate claim because he is no disabled within the meaning of the ADA. Docket No. 29.

Civil No. 08-1459 (JAF)                                                      -8-

1    The ADA both prohibits disparate treatment of disabled
2    individuals and imposes an affirmative duty on employers to offer
3    reasonable accommodations to disabled employees. Calero-Cerezo v.
4    U.S. Dep't of Justice, 355 F.3d 6, 19-20 (1st Cir. 2004). To
5    establish a claim for failure to accommodate under the ADA, a
6    plaintiff must show that (1) he suffers from a disability within the
7    meaning of the statute, (2) he could perform the essential functions
8    of his job with reasonable accommodation, and (3) despite knowing of
9    his disability, his employer did not offer a him reasonable
10   accommodation. Calero-Cerezo, 355 F.3d at 20. An individual is
11   disabled under the ADA if he has "a physical or mental impairment
12   that substantially limits one or more major life activities," has "a
13   record of such impairment," or is "regarded as having such
14   impairment." 42 U.S.C. § 12102. A jury can reasonably find that
15   obesity is a physical impairment within the meaning of the ADA. Cook
16   v. R.I. Dep't of Mental Health, Retardation, & Hosps., 10 F.3d 17, 23
17   (1st Cir. 1993).

18   Plaintiff stated that his morbid obesity does not handicap him,
19   but that it does prevent him from working in narrow spaces or
20   climbing ladders. See Docket No. 42, Ex. 6. This is not sufficient to
21   establish that he was substantially limited in a major life activity.
22   See Hazeldine v. Beverage Media, Ltd., 954 F. Supp. 697, 705
23   (S.D.N.Y. 1997) (finding obese woman's inability to climb stairs

Civil No. 08-1459 (JAF)                                                    -9-

without rest not to constitute substantial limitation on major life activity); Nedder v. Rivier Coll., 908 F. Supp. 66, 75 (D.N.H. 1995) (finding obese woman's inability to walk at average pace not to be substantial limitation on major life activity). Plaintiff has not cited, nor have we found, cases that support a conclusion that working in narrow spaces and climbing ladders constitute major life activities.

Because we find that Plaintiff's obesity did not constitute an impairment that substantially limited a major life activity, we need not consider whether Defendant failed to provide him with reasonable accommodation. Furthermore, we find that Plaintiff cannot establish a discrimination claim based on actual disability.[2]

**C.  Discrimination Based on Perceived Disability**

Plaintiff alleges that Defendant fired him because its decision makers perceived him to be disabled. Docket No. 4. Defendant does not dispute that its supervisors regarded Plaintiff as disabled due to his obesity, but argues that Plaintiff was not qualified for the job because of his absenteeism. See Docket No. 29.

---

[2] Because we find that Plaintiff's obesity was not actually disabling, we find that he was not the victim of a hostile work environment based on disability. We are sympathetic to the trauma that Plaintiff experienced in a workplace where crass jokes and vicious mockery were commonplace, and where the management did not appear to take this conduct seriously and failed to prevent it from recurring. However, the ADA does not provide a remedy for the harassment that Plaintiff suffered.

Civil No. 08-1459 (JAF)                                                -10-

To establish an ADA case on a perceived disability theory, a plaintiff must show (1) that the defendant treated him as though he suffered from an impairment that substantially limited major a life activity; (2) that he was otherwise qualified for the job; and (3) that he was fired or otherwise discriminated against due to the perceived disability. See Cook, 10 F.3d at 23-28. To establish that he is qualified, the plaintiff must show that he has the requisite skill and training for, and that he can perform the essential functions of, the position. Criado v. IBM Corp., 145 R.3d 437, 443 (1st Cir. 1998). "[A]ttendance is an essential function of any job." Ríos-Jiménez v. Principi, 520 F.3d 31, 42 (1st Cir. 2008).

Here, Plaintiff states that "[somebody] threatened to dismiss [him] because, according to Mr. Suárez, [his] obesity (fatness) did not allow [him] to do [his] job and [he] was out of place doing construction and maintenance work." Docket No. 29-3, Ex. 1. Defendant does not contest this account. Accordingly, Plaintiff has sufficiently established that he was perceived as substantially limited in his ability to work. See Ruiz Rivera v. Pfizer Pharm., 521 F.3d 76, 83 (1st Cir. 2008) (holding that working is major life activity). However, Plaintiff cannot establish that he was otherwise qualified to do the job. In the first six months of 2006, he was absent nine times while the four other employees he cites for comparison were absent between one and ten times over the whole year.

See Docket No. 41-4, Ex. 10. Plaintiff was absent twenty times in 2005, as compared to between five and eleven absences among the comparison employees. See id. Suárez and Keene reprimanded him several times for his absenteeism, but Plaintiff was apparently unable to correct the problem. Therefore, even if Defendant fired Plaintiff because it perceived him to be disabled, Plaintiff was not otherwise qualified for the position. See Rios-Jimenez, 520 F.3d at 42 (finding employee unqualified where she had frequent absences).

We find Plaintiff cannot establish a prima-facie case of discrimination based on a perceived disability. Consequently, we grant Defendant's motion for summary judgment on Plaintiff's ADA claims.

**D.    Puerto Rico Claims**

Because we grant summary judgment for Defendant on all federal claims, we decline to exercise supplemental jurisdiction over its associated Commonwealth claims. See Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992) (quoting Cullen v. Mattaliano, 690 F. Supp. 93, 99 (D. Mass. 1988)); see also 28 U.S.C. § 1367(c)(3).

**IV.**

**Conclusion**

For the reasons stated herein, we hereby **GRANT** Defendant's motion for summary judgment, Docket No. 29, and **DISMISS** Plaintiff's

ADA claims **WITH PREJUDICE**. We **DISMISS** Plaintiff's Puerto Rico claims **WITHOUT PREJUDICE** of state court litigation.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 21st day of April, 2009.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U.S. District Judge